**CV 13        7248**

⌐ STATES DISTRICT COURT
ıERN DISTRICT OF NEW YORK

ANGEL PINERO and DAVID KRONFELD,

                        Plaintiff,

              – against –

CITY OF NEW YORK, POLICE OFFICERS JOHN DOE
1 THROUGH 10, SUPERIVISING POLICE OFFICERS
RICHARD ROE 1-10, EACH IN THEIR INDIVIDUAL
AND OFFICIAL CAPACITIES,

                        Defendants.

Civ. Action No.:

**COMPLAINT**

**JURY TRIAL
DEMANDED**

KUNTZ, J.

       Plaintiffs Angel Pinero and David Kronfeld, by their attorneys, Galluzzo and Johnson

LLP, for their Complaint against Defendants City of New York and Police Officers John Doe 1

through 10 and Supervising Police Officers Richard Roe 1 through 10, employed by the New

York City Police Department, upon personal knowledge and upon information and belief, allege

as follows:

<strong>NATURE OF THE ACTION</strong>

       1.     Plaintiffs were victims of a misguided and fundamentally flawed police operation

that was recklessly designed and implemented without any concern for the constitutional rights

of innocent citizens. As a result of their false arrests – for which there was no probable cause –

Plaintiffs were unlawfully detained and suffered tremendous psychological distress and damage

to their reputations.

       2.     On February 23, 2013, Plaintiff Pinero was working at a computer store located at

92 Canal Street in the County of Richmond and State of New York, when police officers placed

him under arrest without probable cause. Nearby, Defendant Police Officers John Doe 1 through

10 arrested Plaintiff Kronfeld at approximately the same time, and did so without probable cause.

Shortly thereafter, Defendant Police Officers John Doe 1 through 10 proceeded to search

Plaintiffs' persons without permission or consent. After conducting the searches, which yielded no contraband or fruits of any crime whatsoever, and without cause to believe that Plaintiffs had committed any arrestable offenses, Defendant Police Officers John Doe 1 through 10 nevertheless restrained Plaintiffs in handcuffs and placed them under arrest without reason. Plaintiffs were then transported against their will to a nearby police station house – the 120th Precinct – where they remained in a jail cell for several hours. Without legal justification, Plaintiffs were then transported to Central Booking at Richmond County Criminal Court in the County of Richmond, State of New York, where they were further detained against their will. Plaintiff Pinero was ultimately released on February 24, 2013 pursuant to the Richmond County District Attorney Office's decision to decline prosecution of his arrest. On that same date Plaintiff Kronfeld was brought against his will before a Richmond County Criminal Court judge, whereupon he received an adjournment in contemplation of dismissal to satisfy the charge of Attempted Criminal Possession of Stolen Property in the Fifth Degree (Penal Law Sections 110/165.40) that had been brought against him.

3.      Plaintiffs bring this action against the aforementioned police officers, and their employer, the City of New York, for personal injuries and loss of wages among other things, arising out of their assault, battery, false arrest, false imprisonment of them, and their violation of Plaintiffs' civil rights.

## PARTIES

4.      Plaintiffs Angel Pinero and David Kronfeld are natural persons who reside in Richmond County, New York.

5.      Defendant City of New York is, and was at the time of the incident that gives rise to this action, a municipal corporation duly organized under, and existing by virtue of, the laws

of the State of New York. At all times relevant to the action, Defendant City of New York employed the remaining Defendant Police Officers in connection with its control, operation, and maintenance of the New York City Police Department.

6.     At all relevant times, herein, Defendant Police Officers John Doe 1 through 10 and Supervising Police Officers Richard Roe 1 through 10 were police officers employed by the New York City Police Department and were acting in the capacity of agents, servants, and employees of the City.

## JURISDICTION AND VENUE

7.     This action is brought pursuant to 42 U.S.C. §§ 1983, 1988 and the Fourth and Fourteenth Amendments to the Constitution of the United States.

8.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and 1343(a)(4).

9.     An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

10.    Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in the County of Richmond which is located in the Eastern District of New York.

## PROCEDURAL REQUIREMENTS

11.    This is an action for psychological injuries and loss of wages, sustained by Plaintiffs arising out of actions perpetrated by Defendants on February 23 and February 24, 2013.

12.    Plaintiffs have complied with General Municipal Law ("GML") § 50 and all procedural requirements necessary to commence a lawsuit against Defendants, including Defendant City of New York.

13.    On or about April 29, 2013, within ninety days after the accrual of the instant action, a satisfactory Notice of Claim was filed with Defendant City of New York on behalf of Plaintiff.

14.    Plaintiffs underwent preliminary examinations pursuant to General Municipal Law § 50-h on July 10, 2013.

15.    Defendant City of New York has refused or neglected to make any adjustment or payment on Plaintiffs' claims.

16.    Plaintiffs hereby commence this action within one year and ninety days of the date of accrual of the instant action.

17.    Joinder of Plaintiffs claims is proper pursuant to Federal Rule of Civil Procedure 20(a) in that their claims stem from the same transaction or occurrence, and by virtue of the fact that their claims involve common questions of law and fact.

## FACTUAL ALLEGATIONS

18.    On February 23, 2013, at approximately 12:00 PM, Plaintiff Pinero was inside of a computer store at 92 Canal Street in Staten Island, New York (Richmond County), where he was employed.

19.    While Plaintiff Pinero was working that day at that store, a man entered the store and offered to sell iPhones to Plaintiff Pinero. Plaintiff Pinero responded that he was not interested in purchasing the merchandise but that he had a friend who might be interested.

20.     At no point did the man ever indicate to Plaintiff Pinero that this merchandise was illegal or stolen. In fact, the man suggested that the merchandise had been legitimately obtained.

21.     Plaintiff Pinero called his friend, Plaintiff Kronfeld, and informed him that the aforementioned man had iPhones for sale. Plaintiff Kronfeld responded that he was interested in purchasing them, and Plaintiff Pinero told the man that Plaintiff Kronfeld would be coming to look at the merchandise.

22.     At some point later that afternoon, Plaintiff Kronfeld drove in his van to 92 Canal Street and met the aforementioned man with iPhones for sale. Upon meeting, they immediately went into Plaintiff Kronfeld's van, which was parked near 92 Canal Street. The man never indicated to Plaintiff Kronfeld that the merchandise was stolen or had been illegally obtained. Plaintiff Kronfeld ultimately purchased four iPhones from the man inside his van parked just a short distance away from 92 Canal Street. Throughout this interaction between the man and Plaintiff Kronfeld, Plaintiff Pinero remained inside 92 Canal Street.

23.     Almost immediately after Plaintiff Kronfeld purchased the merchandise, Defendant Police Officers John Doe 1-10 arrested Plaintiffs. Plaintiff Kronfeld was in his vehicle and Plaintiff Pinero was still inside 92 Canal Street.

24.     Police officers searched Plaintiffs' persons, but no contraband or illegal items were recovered. Indeed, the just-purchased iPhones on Plaintiff Kronfeld's person were not, in fact, stolen property.

25.     Police officers then placed Plaintiffs in handcuffs and forcibly placed Plaintiffs in a police vehicle.

26.     Plaintiffs were then removed, against their will, to the 120th Precinct in Richmond County. While at said police precinct, Plaintiffs were searched again, photographed, fingerprinted, and placed in a holding cell for several hours.

27.     Later, on February 23rd or 24th, Plaintiffs were transported to the criminal court building in Staten Island and held in custody in Central Booking for many more hours, where they were subjected to additional unwanted searches. In total, Plaintiff Pinero spent approximately 22 or 23 hours in custody and Plaintiff Kronfeld spent about 24 hours in custody.

28.     The Richmond County District Attorney's Office declined to prosecute Plaintiff Pinero and as a result he was ultimately released from Central Booking at the criminal court building in Staten Island without being arraigned on any criminal charges.

29.     On February 24, 2013, Plaintiff Kronfeld was brought before a criminal court judge and accused via criminal court complaint with one count of Attempted Criminal Possession of Stolen Property in the Fifth Degree, in violation of Penal Law §§ 110/165.40. Said accusatory instrument was drafted by a representative of the Richmond County District Attorney's Office, and the allegations contained therein were based upon representations made to said representative by Police Officer John Does 1-10.

30.     The prosecutor at Plaintiff Kronfeld's arraignment offered Plaintiff Kronfeld an adjournment in contemplation of dismissal to satisfy the charges against him, and he accepted it. Plaintiff was then released from custody, and the criminal charges against him were wholly dismissed six months later.

31.     As a result of this arrest and detention, Plaintiff Pinero suffered psychological injury (including but not limited to shame, humiliation, anxiety, and fear), missed multiple days of work and the wages that he would have earned had he not been arrested and detained.

Plaintiff also suffered physical discomfort as a result of being arrested, handcuffed, restrained against his will, and forced to remain in unclean holding cells until he was arraigned in criminal court the day after his arrest. Finally, Plaintiff Pinero was terminated by his employer as a result of this arrest.

32.     As a result of this arrest and detention, Plaintiff Kronfeld suffered psychological injury (including but not limited to shame, humiliation, anxiety, and fear), loss of income, and legal fees incurred in defending against his criminal charges. Plaintiff also suffered physical discomfort as a result of being arrested, handcuffed, restrained against his will, and forced to remain in unclean holding cells until he was arraigned in criminal court the day after his arrest. Finally, Plaintiff Kronfeld contracted a temporarily disabling medical condition in his eye as a result of his incarceration.

33.     Plaintiffs were arrested pursuant to a wide ranging police operation that was designed and instigated by Supervising Police Officer Richard Roes 1 through 10 and other employees of Defendant City of New York, with the purported purpose of combating the problem of cellular telephone robberies. However, the supervising police officers that designed this undercover operation did so with a blatant disregard of the risk that innocent individuals would be arrested pursuant to the operation. Those supervising police officers also failed to implement simple safeguards to the operation that would have prevented the arrest of innocent individuals, and failed to instruct other police officers tasked with executing the operation on how to distinguish between innocent and guilty individuals.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983

### As Against the Defendants

34.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 28, inclusive, as though fully set forth herein.

35.     By the aforesaid acts, Police Officer Defendants John Doe 1 through 10 (the "POLICE OFFICER DEFENDANTS"), as well as Defendant City of New York, have violated Plaintiffs' rights to the equal protection of laws under the Fourteenth Amendment, among other violations to the United States Constitution, thereby giving rise to a cause of action pursuant to 42 U.S.C. 1983.

36.     The conduct and actions of the POLICE OFFICER DEFENDANTS, acting under color of law in falsely imprisoning, detaining, and assaulting, were done intentionally, maliciously, and/or with a reckless disregard for the natural and probable consequences of their acts, were done without lawful justification, and were designed to and did cause mental and emotional harm and suffering in violation of Plaintiffs' Constitutional rights as guaranteed under 42 U.S.C. 1983, et seq., deprived the Plaintiffs' Constitutional rights including, but not limited to, his rights under the Fourth and Fourteenth Amendments guaranteeing due process, right to fair trial and equal protection under the law, and Title 42 U.S.C. 1983, et seq.

37.     Defendant City of New York is liable for the acts of its agents/employees, including, but not limited to, the Defendant Police Officers, taken against Plaintiffs during the course, and within the scope, of employment with Defendant City of New York, and while acting under the color of state law.

38.     The actions taken by Police Officers John Doe 1 through 10 – and thus, by Defendant City of New York – against Plaintiffs were willful, wanton, reckless, and malicious, and therefore entitle Plaintiff to punitive damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## FALSE ARREST – 42 U.S.C. § 1983

### As Against the POLICE OFFICER DEFENDANTS

39.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 33, inclusive, as though fully set forth herein.

40.     On December 15, 2011 through December 16, 2011, Defendant Police Officers John Doe 1 through 10 and Supervising Police Officers Richard Roe 1 through 10 intentionally arrested and confined Plaintiffs without probable cause and without his consent.

41.     Defendant Police Officers John Doe 1 through 10 and Supervising Police Officers Richard Roe 1 through 10 caused injuries to Plaintiffs, including psychological injuries and loss of wages, among other things.

42.     Defendant Police Officers John Doe 1 through 10 and Supervising Police Officers Richard Roe 1 through 10 took the aforementioned actions against Plaintiffs during the course, and within the scope, of their employment with Defendant City of New York.

43.     Defendant City of New York is liable for the acts of its agents/employees, including, but not limited to, Defendant Police Officers John Doe 1 through 10 and Supervising Police Officers Richard Roe 1 through 10, taken against Plaintiffs during the course, and within the scope, of employment with Defendant City of New York.

44.     The aforementioned actions taken by Defendant Police Officers John Doe 1 through 10 and Supervising Police Officers Richard Roe 1 through 10 – and thus, by Defendant

City of New York – against Plaintiffs were willful, wanton, reckless, and malicious, and therefore entitle Plaintiffs to punitive damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### FALSE IMPRISONMENT 42 U.S.C. § 1983

### As Against the POLICE OFFICER DEFENDANTS

45.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 40, inclusive, as though fully set forth herein.

46.     On February 23, 2013 and February 24, 2013, Defendant Police Officers John Doe 1 through 10 and Supervising Police Officers Richard Roe 1 through 10 intentionally caused Plaintiffs to be imprisoned and confined at a Staten Island police precinct and Central Booking, which is operated and controlled by Defendant City of New York.

47.     Defendant Police Officers John Doe 1 through 10 and Supervising Police Officers Richard Roe 1 through 10 did not have probable cause or other justification to imprison and confine Plaintiffs.

48.     Plaintiffs did not consent to the aforementioned imprisonment and confinement.

49.     Defendant Police Officers John Doe 1 through 10 and Supervising Police Officers Richard Roe 1 through 10 caused injuries to Plaintiffs, including psychological injuries and loss of wages, among other things.

50.     Defendant Police Officers John Doe 1 through 10 and Supervising Police Officers Richard Roe 1 through 10 took the aforementioned actions against Plaintiffs during the course, and within the scope, of his employment with Defendant City of New York.

51.     Defendant City of New York is liable for the acts of its agents/employees, including, but not limited to, the POLICE OFFICER DEFENDANTS, taken against Plaintiffs during the course, and within the scope, of employment with Defendant City of New York.

52.    The aforementioned actions taken by the POLICE OFFICER DEFENDANTS –
and thus, by Defendant City of New York – against Plaintiffs were willful, wanton, reckless, and
malicious, and therefore entitle Plaintiffs to punitive damages in an amount to be determined at
trial.

**FOURTH CAUSE OF ACTION**
**MONELL CLAIM – 18 USC § 1983**

**As Against Defendant City of New York**

53.    Plaintiffs repeat and re-allege each and every allegation set forth in all preceding
paragraphs with the same force and effect as if more fully set forth at length herein.

54.    All of the acts and omissions by the POLICE OFFICER DEFENDANTS
described above were carried out pursuant to overlapping policies and practices of the Defendant
CITY which were in existence at the time of the conduct alleged herein and were engaged in
with the full knowledge, consent, and cooperation and under the supervisory authority of the
Defendant CITY, and its agency the NYPD.

55.    Defendant CITY and the NYPD, by their other policy-making agents, servants
and employees, authorized, sanctioned and/or ratified the POLICE OFFICER DEFENDANTS'
wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those
acts to continue.

56.    The acts complained of were carried out by the POLICE OFFICER
DEFENDANTS in their capacities as police officers and officials pursuant to customs, policies,
usages, practices, procedures and rules of the Defendant CITY and the NYPD, all under the
supervision of ranking officers of the NYPD.

57.    The aforementioned customs, practices, procedures and rules of the Defendant
CITY and the NYPD include, but are not limited to, the following unconstitutional practices:

a.   Fabricating evidence in order to justify (or attempt to justify) otherwise suspicion-less arrests;

b.   Devising undercover operations designed to entrap law-abiding individuals;

c.   Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

d.   Discouraging police officers from reporting the corrupt or unlawful acts of other police officers;

e.   Retaliating against officers who report police misconduct; and

f.   Failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented by a supervisor or other agent or employee of the NYPD.

58.   The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following civil rights actions filed against the Defendant CITY:

g.   *Schoolcraft v. City of New York*, 10-CV-6005 (RWS) (S.D.N.Y.) (police officer who exposed a precinct's policies and practices of illegal quotas for the issuance of summonses and arrests, falsifying evidence and suborning perjury alleges he was arrested and committed to a psychiatric facility in retaliation for exposing said policies and practices to the press);

h.   *Taylor-Mickens v. City of New York*, 09-CV-7923 (RWS) (S.D.N.Y.) (police officers at the 24th Precinct issue four summonses to a woman in retaliation for her lodging a complaint with the Civilian Complaint Review Board at the precinct);

i.   *Colon v. City of New York*, 09-CV-0008 (E.D.N.Y.) In an Order dated November

25, 2009, which denied the Defendant CITY's motion to dismiss on *Iqbal/Twombly* grounds, wherein the police officers at issue were fired and prosecuted for falsifying evidence in a purported buy-and-bust operation, the Honorable District Court Judge Weinstein wrote:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration – through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department – there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

j.  *Callaghan v. City of New York*, 07-CV-9611 (PKC) (S.D.N.Y.) (officers accused of falsifying evidence and retaliatory arrests of bicyclists engaged in expressive conduct, *to wit*, riding in Critical Mass bicycle rides after the 2004 Republican National Convention);[1]

k.  *Williams v. City of New York*, 06-CV-6601 (NGG), 2009 U.S. Dist. LEXIS 94418 (E.D.N.Y.) (officers arrest Plaintiff during a "vertical patrol" of a public housing project despite evidence that he had a legitimate reason to be on the premises);

l.  *Dunlop v. City of New York*, 06-CV-0433 (RJS), 2008 U.S. Dist. LEXIS 38250 (S.D.N.Y.) (bystander arrested outside the 2004 Republican National Convention while observing arrests occurring in public; alleges that police destroyed exculpatory evidence by deleting portions of a video which contradict sworn criminal complaint);

m.  *Carmody v. City of New York*, 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 83207 (S.D.N.Y.) (police officer alleges that he was terminated for cooperating with another officer's claims of a hostile work environment);

1.  ───────────────

[1] For a description of this case and the nearly $1 million settlement, *see*, Cate Doty, *Bike Riders in New York Win Settlement*, N.Y. Times, October 18, 2010, *available at* http://www.nytimes.com/2010/10/19/nyregion/19critical.html?_r=1.

n. *MacNamara v. City of New York*, 04-CV-9216 (RJS) (JCF) (S.D.N.Y.) (evidence of perjured sworn statements systematically provided by officers to attempt to cover-up or justify unlawful mass arrests of approximately 1800 people has been and continues to be developed in the consolidated litigation arising out of the 2004 Republican National Convention);

o. *McMillan v. City of New York*, 04-CV-3990 (FB) (RML) (E.D.N.Y.) (officers fabricated evidence and used excessive force against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion);

p. *Avent v. City of New York*, 04-CV-2451 (CBA) (CLP) (E.D.N.Y.) (same);

q. *Smith v. City of New York*, 04-CV-1045 (RRM) (JMA) (E.D.N.Y.) (same);

r. *Powers v. City of New York*, 04-CV-2246 (NGG), 2007 U.S. Dist. LEXIS 27704 (E.D.N.Y.) (police officer alleges unlawful retaliation by other police officers after testifying about corruption within the NYPD);

s. *Nonnemann v. City of New York*, 02-CV-10131 (JSR) (AJP), 2004 U.S. LEXIS 8966 (S.D.N.Y.) (former NYPD lieutenant alleging retaliatory demotion and early retirement after reporting a fellow officer to IAB and CCRB for the officer's suspicionless, racially-motivated stop-and-frisk of a group of Hispanic youth);

t. *Richardson v. City of New York*, 02-CV-3651 (JG) (CLP) (E.D.N.Y.) (officers fabricated evidence, including knowingly false sworn complaints, and used excessive force against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion);

u. *Barry v. New York City Police Department*, 01-CV-10627 *2 (CBM), 2004 U.S.

LEXIS 5951 (S.D.N.Y.) (triable issue of fact where NYPD sergeant alleged retaliatory demotion and disciplinary charges in response to sergeant's allegations of corruption within her unit and alleged that the NYPD had an "unwritten but pervasive custom of punishing officers who speak out about police misconduct and encouraging, if not facilitating, silence among officers");

v. *Walton v. Safir*, 99-CV-4430 (AKH), 122 F.Supp.2d 466 (S.D.N.Y. 2000) (factual findings after trial that a 12-year veteran of NYPD was terminated in retaliation for criticizing the racially-motivated policies of the NYPD's Street Crime Unit and for alleging that such policies led to the NYPD BEATING death of Amadou Diallo);

w. *White-Ruiz v. The City of New York*, 93-CV-7233 (DLC) (MHD), 983 F.Supp 365, 380 (S.D.N.Y. 1997) (holding that the NYPD had an "unwritten policy or practice of encouraging or at least tolerating a pattern of harassment directed at officers who exposed instances of police corruption");

x. *Ariza v. City of New York*, 93-CV-5287 (CPS), 1996 U.S. Dist. LEXIS 20250 at*14 (E.D.N.Y.) (police officer alleges retaliatory duty assignments and harassment in response to his allegations about a racially-discriminatory workplace; on motion for summary judgment, the Court held that the police officer had established proof of both a widespread usage of a policy to retaliate against police officers who expose police misconduct and a failure to train in the police department); and

y. *Sorlucco v. New York City Police Department*, 89-CV-7225 (CCH), 88 F.2d 4 (2d Cir. 1989) (former officer entitled to trial on issue of whether she was re-assigned and then terminated after reporting that a fellow officer had raped her).

The existence of the aforesaid unconstitutional customs and practices, specifically with regard to

the failure to supervise, train, instruct and discipline police officers and encouraging their misconduct, are further evidenced, *inter alia*, by the following:

z. The Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department ("Mollen Commission Report"), dated July 7, 1994, states:

> In the face of this problem [of corruption], the [NYPD] allowed its systems for fighting corruption virtually to collapse. It has become more concerned about the bad publicity that corruption disclosures generate that the devastating consequences of corruption itself. As a result, its corruption control minimized, ignored and at times concealed corruption rather than root it out. Such an institutional reluctance to uncover corruption is not surprising. No institution wants its reputations tainted – especially a Department that needs the public's confidence and partnership to be effective. A weak and poorly resourced anti-corruption apparatus minimizes the likelihood of such taint, embarrassment and potential harm to careers. Thus there is a strong institutional incentive to allow corruption efforts to fray and lose priority – which is exactly what the Commission uncovered. This reluctance manifested itself in every component of the Department's corruption controls from command accountability and supervision, to investigations, police culture, training and recruitment. For at least the past decade, the system designed to protect the Department from corruption minimized the likelihood of uncovering it.[2]

aa. Accordingly, in 1990, the Office of the Special Prosecutor, which investigated charges of police corruption, was abolished.

bb. In response to the Honorable Judge Weinstein's ruling of November 25, 2009 in *Colon v. City of New York*, 09 Civ. 00008 (E.D.N.Y.), in which he noted a "widespread […] custom or policy by the city approving illegal conduct" such as lying under oath and false swearing, Commissioner KELLY acknowledged, "When it happens, it's not for personal gain. It's more for convenience."[3]

cc. Defendant CITY's tacit condoning of and failure to supervise, discipline or provide remedial training when officers engage in excessive force is evidenced by its systematic disregard of the recommendations of the Civilian Complaint Review Board 1.

---

[2] Mollen Commission Report, pp. 2-3, *available at* http://www.parc.info/client_files/Special%20Reports/ 4%20-%20Mollen%20Commission%20-%20NYPD.pdf.

[3] Oren Yaniv and John Marzulli, *Kelly Shrugs Off Judge Who Slammed Cops*, New York Daily News, December 2, 2009, *available at* http://www.nydailynews.com/news/ny_crime/2009/12/02/2009-12-02_kelly_shrugs_off_judge_who_rips_lying_cops.html.

("CCRB"). CCRB is a Defendant CITY agency, allegedly independent of the NYPD that is responsible for investigating and issuing findings on complaints of police abuse and misconduct.[4] When it does, however, Police Commissioner Ray Kelly controls whether the NYPD pursues the matter and he alone has the authority to impose discipline on the subject officer(s). Since 2005, during Kelly's tenure, only one-quarter of officers whom the CCRB found to have engaged in misconduct received punishment more severe than verbal "instructions." Moreover, the number of CCRB-substantiated cases that the NYPD has simply dropped (i.e., closed without action or discipline) has spiked from less than 4% each year between 2002 and 2006, to 35% in 2007, and approximately 30% in 2008. Alarmingly, the NYPD has refused to prosecute 40% of the cases sent to it by the CCRB in 2009.[5] As a result, the percentage of cases where the CCRB found misconduct but where the subject officers were given only verbal instructions or the matter was simply dropped by the NYPD rose to 66% in 2007. Substantiated complaints of excessive force against civilians accounted for more than 10% of the cases that the NYPD dropped in 2007 and account for more than 25% of cases dropped in 2008.[6]

dd. Kieran Creighton, commander of the NYPD Housing Police Service Area 8 in the northern Bronx, was investigated for ordering officers to make a certain number of arrests each month and for pushing officers to falsify official documents. According to The New York Daily News:

1. ——————————

---

[4] In 2006, out of more than 10,000 allegations that were fully investigated, the CCRB substantiated only 594 (about 6%). In 2007, out of more than 11,000 allegations that were fully investigated, the CCRB substantiated only 507 (about 5%). *See*, CCRB Jan.-Dec. 2007 Status Report at p. 19, *available at* http://www.nyc.gov/html/ccrb/pdf/ccrbann2007_A.pdf. Upon information and belief, the low rate of substantiated complaints is due in part to the above-noted *de facto* policy and/or well-settled and widespread custom and practice in the NYPD whereby officers refuse to report other officers' misconduct or tell false and/or incomplete stories, *inter alia*, in sworn testimony and statements given to the CCRB, to cover-up civil rights violations perpetrated by themselves or fellow officers, supervisors and/or subordinates.

[5] Christine Hauser, *Few Results for Reports of Police Misconduct*, New York Times, October 5, 2009, at A19.

[6] Daily News, *Editorial: City Leaders Must Get Serious About Policing the Police*, August 20, 2008.

The incident allegedly occurred in the spring when Creighton ordered at least eight members of an undercover anti-crime team to a meeting in Pelham Bay Park to berate them about an alleged lack of arrests, sources said.

"You can't make the nine collars a month, then we'll all have to go our separate ways," Creighton told the officers, according to an internal complaint obtained by The News.

Anything less than nine arrests would be a "personal slap in the face," Creighton allegedly said.

Creighton then told the cops to "finagle" the times of arrests so any overtime was paid for by a federally funded anti-drug program, the complaint alleges.

Unbeknownst to Creighton, one officer had his NYPD radio switched on - so the captain's 10 to 12 minute speech was broadcast to Bronx precincts in Morrisania and Schuylerville and taped by a 911 dispatcher.[7]

The existence of the aforesaid unconstitutional customs and practices, specifically with regard to the practice or custom of officers lying under oath, falsely swearing out criminal complaints, or otherwise falsifying or fabricating evidence, are further evidenced, *inter alia*, by the following:

ee. The Mollen Commission concluded that police perjury and falsification of official records is probably the most common form of police corruption facing the criminal justice system. It concluded:

Regardless of the motives behind police falsifications, what is particularly troublesome about this practice is that it is widely tolerated by corrupt and honest officers alike, as well as their supervisors. Corrupt and honest officers told us that their supervisors knew or should have known about falsified versions of searches and arrests and never questioned them.[8]

[...]

What breeds this tolerance is a deep-rooted perception among many officers of all ranks within the Department that nothing is really wrong with compromising facts to fight crime in the real world. Simply put, despite the devastating consequences of police falsifications, there is a persistent belief among many officers that it is necessary and justifies, even if unlawful. As one dedicated officer put it, police officers often view falsification as, to use his words, "doing God's work" – doing whatever it takes to get a suspected criminal off the streets. This attitude is so entrenched, especially in high-crime precincts, that when investigators confronted one recently arrested officer with evidence

1. ───────────────────

[7] Allison Gendar, *NYPD captain allegedly caught in arrest quota fixing*, The New York Daily News, November 14, 2007, *available at* http://www.nydailynews.com/news/ny_crime/2007/11/14/2007-11-14_nypd_captain_allegedly_caught_in_arrest_-1.html#ixzz0bfPBhRTz.

[8] Mollen Commission Report, p. 36.

of perjury, he asked in disbelief, "What's wrong with that? They're guilty."[9]

ff. In late 2009, a former NYPD officer in the Bronx, Pedro Corniel, was charged with perjury for claiming to have caught a burglar "red-handed," when, in fact, two other officers had made the arrest and handed the arrest off to Mr. Corniel. The suspect was released.[10] Moreover,

> Prosecutors and NYPD Internal Affairs probers have identified as many as two dozen cases in the past year in which cops allegedly made false statements involving routine arrests when the truth would have served them just as well.
>
> That's a significant increase over previous years, sources said. "In the past, we'd find this happening once or twice a year, and now there are a bunch of them," said one law-enforcement official.
>
> What has the authorities particularly troubled is that officers historically have lied to cover up more serious corruption, such as the cadre of Brooklyn narcotics cops caught last year stealing drugs from dealers and masking their thievery by filing false reports about what they had seized.
>
> But internal probers are now finding that officers appear willing to take insidious shortcuts and lie on arrest reports when they are processing even routine collars, such as grand larceny, burglaries and robberies, sources told The Post.
>
> Their reasons could range from trying to cut down on paperwork to being lazy when filling out arrest and incident reports.[11]

gg. In 2007, former NYPD Officer Dennis Kim admitted to accepting money and sexual favors from the proprietor of a brothel in Queens County in exchange for protecting that brothel. Mr. Kim was convicted of criminal charges in connection with those offenses. The 109th Precinct of the NYPD, which used to be Mr. Kim's command, is also under investigation by the United States Attorney's Office for "plant[ing] drugs on suspects and steal[ing] cash during gambling raids." The 109th Precinct is believed to be involved in a practice known as "flaking" wherein police officers plant drugs on suspects in order to bring legitimacy to an arrest. According to Assistant United States Attorney

1. ————————————

[9] Mollen Commission Report, pp. 40-41.
[10] Murray Weiss, *NYPD in a Liar Storm*, New York Post, October 26, 2009, *available at* http://www.nypost.com/p/news/local/nypd_in_liar_storm_qazMBEm3UNJVogv4Ndeqcl.
[11] *Id.*

Monica Ryan, members of the 109th Precinct "maintained a small stash of drugs in an Altoids tin for this purpose."[12]

hh. In December of 2009, two (2) officers from the 81st Precinct in Brooklyn arrested and falsely swore out charges against an undercover officer from the Internal Affairs Bureau. As explained in an article in the New York Post:

> The officers were snared in a sting by Internal Affairs in December when they were told to keep an eye out for people selling untaxed cigarettes in their precinct.
>
> Some time later, they saw a man hanging out on a corner in the neighborhood and found that he was carrying packs of knock-off smokes.
>
> [Sgt. John] Stukes, 45, and [Officer Hector] Tirado, 30, cuffed him, but then claimed that they had seen him selling the bogus butts to two people, according to sources.
>
> Little did the hapless cops know that the man in their custody was an undercover corruption investigator and that the whole incident was caught on video.
>
> To complete the ruse, the undercover cop was processed at the station house so as to not tip off Stukes and Tirado about the sting…
>
> [P]olice sources said [this action] stem[s] from precinct commanders caving to the pressure of top brass to make themselves look better.
>
> "There's pressure on the cops from the bosses and they're getting pressured from headquarters," a police source told The Post.[13]

The officers were indicted for felony perjury, filing a false report and filing a false instrument.[14]

ii. In early 2010, the Defendant CITY settled a civil rights lawsuit wherein one Officer Sean Spencer[15] falsely arrested and accused a 41-year old grandmother of prostitution, promising to pay the woman $35,000. In court documents, Caroline Chen,

1. ―――――――――

---

[12] John Marzulli, *Claims of Corruption at Queens Precinct Put Crooked Cop's Sentencing on Hold*, New York Daily News, June 20, 2008, *available at* http://www.nydailynews.com/news/ny_crime/2008/06/20/ 2008-06-20_claims_of_corruption_at_queens_precinct_.html.

[13] Larry Celona and Tim Perone, *Cops Sting Cops*, N.Y. Post, July 30, 2010, available at http://www.nypost.com/p/news/local/brooklyn/cops_sting_cops_lyItuTeLedhKWtruJZYsdL.

[14] John Marzulli, *Brooklyn cops charged with barding into sting operation, arresting a fellow officer on bogus charges*, N.Y. Daily News, July 30, 2010, available at http://www.nydailynews.com/ny_local/2010/07/30/ 2010-07-30_brooklyn_cops_charged_with_barging_into_sting_operation_arresting_a_fellow_offic.html.

[15] In sum, the CITY has paid out $80,000 to settle four (4) federal lawsuits against Officer Sean Spencer. John Marzulli, *City shells out $35G to grandmother, Monica Gonzalez, busted as hooker*, New York Daily News, January 7, 2010, *available at* http://articles.nydailynews.com/2010-01-08/local/17943916_1_prostitution-charges-arrested

the attorney representing the Defendant CITY in the case, admitted: "Officer Spencer falsely reported to the assistant District Attorney that he saw [the Plaintiff] beckon to three male passersby and that he was aware that Plaintiff was previously arrested for [prostitution] when the Plaintiff had never been arrested for this offense." According to the attorney for the Patrolmen's Benevolent Association, disciplinary charges against the officer are pending.[16]

jj.   Separate grand jury investigations into drug-related police corruption in the Bronx and Manhattan revealed that more than a dozen officers had been breaking into drug dealers' apartments, stealing and then selling their drugs and perjuring themselves by filing false arrest reports. District attorneys and their assistants interviewed during a four-month investigation by New York Newsday said they believe those two grand jury investigations - in the 46th Precinct in the University Heights section of the Bronx and the 34th Precinct - are not isolated instances. They say the investigations reflect a larger, broader problem within the NYPD that its top officials seem unable or unwilling to acknowledge.[17]

60.   The existence of the aforesaid unconstitutional customs and practices, specifically with regard to the practice or custom of discouraging police officers from reporting the corrupt or unlawful practices of other police officers and of retaliating against officers who report misconduct, are further evidenced, *inter alia*, by the following:

a.   Former New York County District Attorney Robert Morgenthau has been quoted as acknowledging that, in the NYPD, there is a "code of silence," or a "code of protection" that exists among officers and that is followed carefully;

1.   ———————————————————

[16] *Id.*

[17] David Kocieniewski and Leonard Levitt, *When the Finest Go Bad: DAs, others say department overlooks corruption*, New York Newsday, November 18, 1991, at 6.

b.  In 1985, former NYPD Commissioner Benjamin Ward, testifying before a State Senate Committee, acknowledged the existence of the "code of silence" in the NYPD;

c.  Former NYPD Commissioner Robert Daly wrote in 1991 that the "blue wall of solidarity with its macho mores and prejudices, its cover-ups and silence, is reinforced every day in every way."

61.  The existence of the above-described unlawful *de facto* policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officer and officials of the NYPD and the Defendant CITY.

62.  The aforementioned actions of the POLICE OFFICER DEFENDANTS resulted from and were taken pursuant to the above-mentioned *de facto* policies and/or well-settled and widespread customs and practices of the Defendant CITY, which are implemented by members of the NYPD, of engaging in systematic and ubiquitous perjury, both oral and written, to cover-up federal law violations committed against civilians by either themselves of their fellow officers, supervisors and/or subordinates. They do so with the knowledge and approval of their supervisors, who all: (i) tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, *inter alia*, in sworn testimony, official reports, in statements to the CCRB and the Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and (ii) encourage and, in the absence of video evidence blatantly exposing the officers' perjury, fail to discipline officers for "testilying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil rights violations perpetrated by themselves of fellow offices, supervisors and/or subordinates against those civilians.

63.     All of the foregoing acts by Defendants deprived Plaintiffs of federally protected rights, including, but limited to, the right:

    a.   Freedom from unreasonable searches and seizures of his person;

    b.   Freedom from arrest without probable cause;

    c.   Freedom from false imprisonment, meaning wrongful detention without good faith, reasonable suspicion or legal justification, and of which Plaintiffs were aware and did not consent;

    d.   Freedom from deprivation of liberty without due process of law; and

    e.   The enjoyment of equal protection, privileges and immunities under the laws.

64.     Defendant CITY knew or should have known that the acts alleged herein would deprive Plaintiffs of their rights, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

65.     Defendant CITY is directly liable and responsible for the acts of the POLICE OFFICER DEFENDANTS because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulation of the Defendant CITY and NYPD, and to require compliance with the Constitution and laws of the United States.

66.     Despite knowledge of such unlawful *de facto* policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and Defendant CITY, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their

active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

67. The aforementioned Defendant CITY policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned Defendant CITY policies, practices and/or customs, the POLICE OFFICER DEFENDANTS felt empowered to exercise unreasonable and wholly unprovoked force against Plaintiffs and arrest Plaintiffs without probable cause. Pursuant to the aforementioned Defendant CITY policies, practices and/or customs, the POLICE OFFICER DEFENDANTS failed to intervene in or report other Defendants' violation of Plaintiffs' rights.

68. Plaintiffs' injuries were a direct and proximate result of the Defendant CITY and the NYPD's wrongful *de facto* policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the Defendant CITY and the NYPD to properly supervise, train and discipline their police officers.

69. The actions of the POLICE OFFICER DEFENDANTS resulted from and were taken pursuant to the foregoing *de facto* policies and/or well-settled and widespread customs and practices of the Defendant CITY, which implemented by agents or employees of the NYPD, of employing wholly unprovoked and excessive force.

70. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of the Plaintiffs' constitutional rights.

71. As a direct and proximate cause of the acts of all Defendants as set forth above,

Plaintiffs suffered physical injury, loss of income, medical expenses, and severe mental anguish in connection with the deprivation of this constitutional and statutory rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. § 1983.

### FIFTH CAUSE OF ACTION
### BATTERY

#### As Against the POLICE OFFICER DEFENDANTS

72.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 71, inclusive, as though fully set forth herein.

73.     On February 23, 2013 and February 24, 2013, Defendant Police Officers John Doe 1 through 10, through their actions, intentionally initiated wrongful physical contact with Plaintiffs without their consent.

74.     Defendant Police Officers John Doe 1 through 10 handcuffed and restrained Plaintiff without legal justification, causing Plaintiffs to sustain psychological injuries and loss of wages, among other things.

75.     Defendant Police Officers John Doe 1 through 10 took these actions against Plaintiffs during the course, and within the scope, of their employment with Defendant City of New York.

76.     Defendant City of New York is liable for the acts of its agents/employees, including, but not limited to, Defendant Police Officers John Doe 1 through 10 and Superivising Police Officers Richard Roes 1 through 10, taken against Plaintiffs within the scope of employment with Defendant City of New York under the doctrine of *respondeat superior.*

77.     The Actions taken by the POLICE OFFICER DEFENDANTS – and thus, by Defendant City of New York – against Plaintiffs were willful, wanton, reckless, and malicious, and therefore entitle Plaintiff to punitive damages in an amount to be determined at trial.

78.     Plaintiffs repeat and re-allege each and every allegation set forth in all preceding paragraphs with the same force and effect as if more fully set forth at length herein.

79.     All of the acts and omissions by the POLICE OFFICER DEFENDANTS described above were carried out pursuant to overlapping policies and practices of the Defendant CITY which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the Defendant CITY, and its agency the NYPD.

80.     Defendant CITY and the NYPD, by their other policy-making agents, servants and employees, authorized, sanctioned and/or ratified the POLICE OFFICER DEFENDANTS' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

81.     The acts complained of were carried out by the POLICE OFFICER DEFENDANTS in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the Defendant CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

### SIXTH CAUSE OF ACTION
### (42 U.S.C. §§ 1983, 1986 – FAILURE TO INTERVENE)

### As Against the POLICE OFFICER DEFENDANTS

82.     Plaintiffs repeat and re-allege each and every allegation set forth in all preceding paragraphs with the same force and effect as if more fully set forth at length herein.

83.     Each of the Defendants was physically present during either the unlawful arrest or illegal detention of Plaintiffs, and thus had knowledge of the conspiracy to arrest, harm, and wrongfully deprived Plaintiffs of their constitutional and statutory rights as set forth above.

84.     Each of the Defendants, through the exercise of reasonable diligence, had the power to prevent or aid in preventing such deprivation.

85.     Each of the Defendants neglected or refused to prevent such deprivation.

86.     As a direct and proximate cause of the acts of each of the Defendants as set forth above, Plaintiffs suffered physical injury, loss of income, medical expenses, and severe mental anguish in connection with the deprivation of this constitutional and statutory rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. § 1983.

### SEVENTH CAUSE OF ACTION
### (42 U.S.C. §§ 1985 – CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS)

#### As Against the POLICE OFFICER DEFENDANTS

87.     Plaintiffs repeat and re-allege each and every allegation set forth in all preceding paragraphs with the same force and effect as if more fully set forth at length herein.

88.     Each of the Defendants conspired for the purpose of depriving Plaintiffs the equal protection of the laws.

89.     Each of the Defendants took an act in furtherance of the object of said conspiracy.

90.     As a direct and proximate cause of the acts of all Defendants as set forth above, Plaintiffs suffered loss of income and severe mental anguish in connection with the deprivation of this constitutional and statutory rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. § 1983.

## EIGHTH CAUSE OF ACTION
## (NEW YORK CONSTITUTION ART I, SECTION 11 AND 15)

### As Against the POLICE OFFICER DEFENDANTS

91.     Plaintiffs repeat and re-allege each and every allegation set forth in all preceding paragraphs with the same force and effect as if more fully set forth at length herein.

92.     By the aforesaid acts, Defendants have violated Plaintiffs' right to the equal protection laws under Article I, 11 of the New York State Constitution, thereby giving rise to a cause of action pursuant to that article.

93.     The conduct and actions of the each of the Defendants, acting under color of state law, in falsely arresting and imprisoning Plaintiffs, were done intentionally, maliciously and/or with a reckless disregard for the natural and probable consequences of their acts, without lawful justification, and were designed to and did cause specific and serious injury, mental and emotional harm, and pain and suffering in violation of the Plaintiffs' constitutional rights as guaranteed under the laws and Constitution of the State of New York. As a result of said actions, Plaintiffs were deprived of such rights, including, but not limited to, rights under Article I, 8-9 of the New York State Constitution guaranteeing freedom of expression and association, Article I, 12, guaranteeing protection against unlawful seizure of his person, Article I, 11, guaranteeing due process and equal protection under the law, and Article I, 15, guaranteeing protection from cruel and unusual punishment.

94.     As a result of the foregoing, Plaintiffs suffered specific psychological and emotional injury, costs and expenses, and were otherwise damaged and injured.

95.     For all claims under New York State Law, Defendants are jointly and severally liable to Plaintiffs inasmuch as this action arises out of the exceptions set forth in 1602 subdivisions 5, 7 and 11 of the Civil Practice Law and Rules.

## NINTH CAUSE OF ACTION
## (NEGLIGENCE)

### AS AGAINST THE DEFENDANTS

96.     Plaintiffs repeat and re-allege each and every allegation set forth in all preceding paragraphs with the same force and effect as if more fully set forth at length herein.

97.     The Defendants, including but not limited to the POLICE OFFICER DEFENDANTS and other officers that failed to intervene, owed Plaintiffs a duty of reasonable care.

98.     However, the negligent acts complained of by Plaintiffs and committed by Defendants seriously endangered Plaintiffs' physical safety and were obviously likely to cause severe emotional injury to Plaintiffs.

99.     Moreover, the negligent acts complained of by Plaintiffs and committed by Defendants amounted to outrageous conduct that cannot be tolerated in a civilized community.

100.    Each of the Defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the Plaintiffs. The acts and conduct of the Defendants were the direct and proximate cause of the injury and damage to the Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

101.    As a result of the foregoing, the Plaintiffs were deprived of their liberty, suffered specific pain and suffering, psychological and emotional injury, costs and expenses, and were otherwise damaged and injured.

102.    For all claims under New York State Law, Defendants are jointly and severally liable to Plaintiffs inasmuch as this action arises out of the exceptions set forth in 1602 subdivisions 5, 7 and 11 of the Civil Practice Law and Rules.

## TENTH CAUSE OF ACTION
## (NEGLIGENT HIRING AND RETENTION)

### As Against DEFENDANT CITY

103.     Plaintiffs repeat and re-allege each and every allegation set forth in all preceding paragraphs with the same force and effect as if more fully set forth at length herein.

104.     The Defendant CITY and NYPD did not exercise reasonable care and diligence in the selection, engagement, employment and training of its agents, servants, and employees and were negligent in the hiring, training and retention of the POLICE OFFICER DEFENDANTS, so as to cause injury to Plaintiffs.

105.     Such negligence consisted of negligence in training, hiring, supervision and retention of the POLICE OFFICER DEFENDANTS involved in this incident; in failing to observe the existing police department protocols for police officers/detectives designed to govern the use of force causing the emotional injuries arising and resulting out of the aforementioned wrongful arrest of the Plaintiffs and further, deprived Plaintiffs' civil rights, privileges and immunities secured under the Constitutions of the United States Of America and State of New York; failing to properly investigate their background; failing to properly train and instruct police officers/detectives, especially regarding the abuse of power while in the field; failing to give police officers/detectives proper instructions on the use of force; improperly supervising police officers/detectives in the field, including the police officers/detectives as well as in the staffing, administration and processing of persons suspected of violation of the criminal laws of the State of New York which allowed the beating of the Plaintiffs, which resulted in the serious injuries Plaintiffs sustained.

106.     The Defendant CITY and NYPD, through their agents, servants, employees, including but not limited to the POLICE OFFICER DEFENDANTS were negligent, reckless and

careless in arresting the Plaintiffs.

107.    The Defendant CITY and NYPD had prior knowledge of the inappropriate, unlawful, and improper conduct of the POLICE OFFICER DEFENDANTS, and continued to employ them and allowed them to be in contact with the public at large.

108.    For all claims under New York State Law, Defendants are jointly and severally liable to Plaintiffs inasmuch as this action arises out of the exceptions set forth in 1602 subdivisions 5, 7 and 11 of the Civil Practice Law and Rules.

**ELEVENTH CAUSE OF ACTION**
**(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

**As Against the POLICE OFFICER DEFENDANTS**

109.    Plaintiffs repeat and re-allege each and every allegation set forth in all preceding paragraphs with the same force and effect as if more fully set forth at length herein.

110.    The intentional acts complained of by Plaintiffs and committed by the Defendants amount to extreme and outrageous conduct that cannot be tolerated in a civilized community.

111.    The intentional acts complained of by Plaintiffs and committed by the Defendants were plainly likely to cause extreme emotional distress to Plaintiffs.

112.    As a result of the foregoing acts by Defendants, the Plaintiffs were deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

113.    For all claims under New York State Law, Defendants are jointly and severally liable to Plaintiffs inasmuch as this action arises out of the exceptions set forth in 1602 subdivisions 5, 7 and 11 of the Civil Practice Law and Rules.

## TWELFTH CAUSE OF ACTION
## (PRIMA FACIE TORT)

### As Against the DEFENDANTS

114.    Plaintiffs repeat and re-allege each and every allegation set forth in all preceding paragraphs with the same force and effect as if more fully set forth at length herein.

115.    Defendants, including but not limited to the POLICE OFFICER DEFENDANTS, intentionally caused physical and emotional injury to Plaintiffs and had no excuse or justification for their actions.

116.    As a result of the foregoing, the Plaintiffs were deprived of their liberty, suffered injury, pain and suffering, psychological and emotional injury, costs and expenses, and were otherwise damaged and injured.

117.    For all claims under New York State Law, Defendants are jointly and severally liable to Plaintiff inasmuch as this action arises out of the exceptions set forth in 1602 subdivisions 5, 7 and 11 of the Civil Practice Law and Rules.

## THIRTEENTH CAUSE OF ACTION
## (MALICIOUS PROSECUTION)

### As Against the POLICE OFFICER DEFENDANTS

118.    Plaintiff Pinero repeats and re-alleges each and every allegation set forth in all preceding paragraphs with the same force and effect as if more fully set forth at length herein.

119.    Plaintiff Pinero's criminal case stemming from the above-described unlawful arrest was terminated in his favor when the Richmond County District Attorney's Office declined and prosecute him and thereby dismissed all criminal charges against him.

120.    The Police Officer Defendants did not have probable cause to arrest Plaintiff Pinero or cause him to be arrested, nor did they have a reasonable basis to attempt to initiate a

prosecution against him, as they did when they arrested him, imprisoned him, took him to Central Booking, and then communicated with the Richmond County District Attorney's Office in an effort to have him prosecuted criminally.

121. As a direct and proximate cause of the acts of all Defendants as set forth above, Plaintiffs suffered loss of income and loss of liberty and severe mental anguish in connection with the deprivation of this constitutional and statutory rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. § 1983.

122. **WHEREFORE**, Plaintiffs Angel Pinero and David Kronfeld respectfully request judgment upon all causes of action against Defendants as follows:

1. With respect to the Defendant CITY and NYPD:

a. Declaratory judgment declaring that Defendant CITY and NYPD has violated the aforesaid statutes and constitutions.

b. Restitution to Plaintiffs of their rights, privileges, benefits and income which would have been received by him but for the Defendants unlawful, wrongful, tortuous, and unconstitutional conduct;

c. Compensatory damages in an amount to be determined by the court and jury;

d. Punitive damages in the amount to be determined by the court and jury;

e. Reasonable attorney's fees, disbursements and costs of this action, pursuant to 42 U.S.C. § 1988;

f. All legal and statutory interest on sums awarded; and

g. Such other and further relief as this honorable court may deem just, proper and equitable.

2.      With respect to each of the POLICE OFFICER DEFENDANTS:

a.  Declaratory judgment declaring that the Defendants have violated the aforesaid statues and constitutions;

b.  Restitution to Plaintiffs of their rights, privileges, benefits and income which would have been received by them but for each Defendant's unlawful, wrongful, tortuous, and unconstitutional conduct;

c.  Compensatory damages in an amount to be determined by the court and jury;

d.  Punitive damages in an amount to be determined by the court and jury;

e.  Reasonable attorney's fees, disbursements, and costs of this action, pursuant to 42 42 U.S.C. § 1988;

f.  All legal and statutory interest on sums awarded; and

g.  Such other and further relief as this honorable court may deem just, proper and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek judgment in his favor and against Defendants, jointly and severally, for damages for the following relief:

h.  compensatory damages against Defendants, jointly and severally, in an amount to be determined at trial, with pre- and post-judgment interest;

i.  lost wages in an amount to be determined at trial;

j.  attorneys' fees and the costs of the instant action, including all costs incurred herein;

k.  punitive damages;

l.  such other and further relief as the Court deems proper and fair.

Dated: New York, New York
      December 3, 2013

GALLUZZO & JOHNSON LLP

Matthew J. Galluzzo
*Attorney for Plaintiffs Pinero and Kronfeld*
Galluzzo & Johnson LLP
48 Wall Street, 11th Floor
New York, New York 10005
Tel: 212.918.4661